UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CASE NO. 1:01CR62 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge John R. Adams |
| | ) | |
| DESHUN WELLS, | ) | ORDER |
| | ) | |
| Defendant. | ) | |
| | ) | |

The Court conducted an evidentiary hearing on Defendant Deshun Wells' alleged supervised release violations on June 1, 2022 and October 27, 2022.  Wells is alleged to have violated his supervised release in three ways.  First, he is alleged to have committed an assault on March 5, 2022.  Second, he is alleged to have failed to report contact with police on March 5, 2022 related to the alleged assault.  Finally, he is alleged to have fled from officers on March 16, 2022.

In order to revoke supervised release, the sentencing court must find by a preponderance of the evidence that a defendant has violated a condition of his supervised release. *See United States v. Lowenstein*, 108 F.3d 80, 85 (6th Cir.1997).  To evaluate the allegations against Wells, the Court conducted an evidentiary hearing with witness testimony being received on June 1, 2022 and October 27, 2022.  Upon the Court's evaluation of the testimony and evidence, the Court concludes that Wells violated his supervised release with respect to all three allegations.

There are certain background facts that Wells does not dispute.  Specifically, Wells

1

attended a New Edition concert with his then-girlfriend, K.S.[1]  Anthony Lemmons and Shannon Wilson attended the concert with Wells and K.S.  Around the time the parties entered the concert venue, K.S. and Wells became separated over an issue involving electronic tickets and K.S.'s need to use the restroom.  Ultimately, this separation led to an angry disagreement between K.S. and Wells, and K.S. departed the concert venue alone.  The parties' stories diverge from that point forward.

Wells testified that following the concert, he went to a restaurant/bar with Wilson and Lemmons and stayed there until roughly 2 a.m.  Wells asserted that following the closing of that restaurant, they went to an after-hours club and stayed there past 4 a.m. on what was now the morning of March 5, 2022.  Wilson and Lemmons offered testimony that established a substantially similar timeline and version of events.

In contrast, K.S. left the concert and took an Uber to her apartment, arriving at roughly 11:00 p.m.  After falling asleep, K.S. testified that she was startled awake by Wells:

> The next thing I remember Deshun coming in the house, because he had a key, and he grabbed my ankles -- he had grabbed my ankles real tight, and he pulled me -- actually, where -- you know, he pulled me down.

Doc. 180 at 19.  K.S. described Wells as angry and indicated that after squeezing her ankles, Wells "put his hands around my neck.  Squeezed my neck." Doc. 180 at 21.  K.S. noted that Wells knew that squeezing her ankles would cause pain because of a prior injury he had inflicted upon her.  K.S. then continued, noting that Wells also scratched her chest area.  Finally, K.S. noted that when she attempted to call the police, Wells threw and broke her cell phone.  Shortly after the physical altercation, Wells left K.S.'s apartment.

---

[1] As K.S. is the victim herein, the Court will utilize initials to identify her.

K.S. testified that some time later that morning, she went to the bathroom and noticed the bruises that Wells' assault had caused. At this time, K.S. texted Wells that she was going to go to the emergency room so that others could see what Wells had done to her. Wells then returned to the apartment and attempted to talk K.S. out of going to the hospital. K.S. was not swayed by Wells and went to the local emergency room. Hospital staff contacted police with K.S.'s permission, and she was subsequently interviewed by Officer Kevin Watts. Officer Watts also took photographs of K.S.'s injuries. K.S. was ultimately discharged from the emergency room at 6:46 a.m. on March 5, 2022.

Officer Watts confirmed that he responded to the call placed by hospital personnel and interviewed K.S. After concluding with K.S., Officer Watts used the phone number she provided and called Wells. Officer Watts testified that after informing Wells of the allegations against him, Wells denied any involvement and claimed he has been sleeping all night. Officer Watts also confirmed that he was present when Wells called K.S. while she was still at the emergency room. When Wells claimed to have been asleep all night, Officer Watts informed him that he was aware of the prior call. In response, Wells continued to deny any involvement. Shortly thereafter, Officer Watts informed Wells that he would be presenting the information to a local judge to determine whether a warrant should issue. In response, Wells hung up on the officer.

K.S. also testified that Wells returned to her apartment on March 16, 2022, at some time between 3:00 and 4:00 a.m. At that time, K.S. called 911 because she was aware a warrant had been issued for Wells arrest.[2] K.S. also attempted to physically stop Wells from leaving by grabbing his legs. As a result, Wells lost at least one shoe. While on the 911 call, K.S. told

---

2 This call was made at 3:50 a.m.

3

officers that Wells was leaving her building and that she saw him get into a brown Porsche, the same vehicle K.S. claims she and Wells took to the concert.

Officer Watts was also the officer that responded to the 911 call. Officer Watts testified that as he was approaching the apartment complex, he saw two vehicles leaving: "One was an SUV with its headlights on, and the second one was a Porsche – a gray or silver Porsche with its headlights off." Doc. 180 at 60. Officer Watts noted that K.S. had reported that Wells had left in a Porsche with the headlights off. Officer Watts continued:

> So I activated my spotlight. As I was pulling around the corner, I got a direct view of Mr. Wells. And it looked exactly like his BMV image.

Doc. 180 at 61. Officer Watts then activated his overhead light bar and began to pursue the Porsche. Upon getting behind the Porsche, Officer Watts also activated his siren. During the pursuit, Officer Watts witnessed the Porsche run a red light and reach a speed of roughly 130 miles per hour on an entrance ramp to the highway. At the point, Officer Watts was ordered to terminate his pursuit for public safety.

In contrast to the testimony offered by Officer Watts and K.S., Wells offered testimony that contradicts nearly every meaningful fact above. As noted above, Shannon Wilson and Anthony Lemmons offered testimony that they accompanied Wells and K.S. to the concert. Wilson and Lemmons then described an evening that included stops after the concert at Sausalito and Swerve. These witnesses described Sausalito as a bar and restaurant and Swerve as an after-hours club with a Jamaican theme. Both these witnesses contend that Wells was consistently in their presence at these venues and arrived back at Lemmons' apartment at some time after 4:00 a.m. With respect to the March 16, 2022, incident, Wells offered the testimony of an ex-girlfriend, Donna Redd, who

4

claimed that after he left K.S.'s apartment, he came to her apartment and stayed for several hours. Wells himself gave a version of events that match up with the versions offered by his witnesses.

Based upon the above, the Court was required to judge the credibility of the witnesses that appeared on both days of the hearing as it is apparent that not all of the witnesses could have testified truthfully. With respect to the March 16, 2022, incident, the Court initial notes that Officer Watts was the only neutral witness to offer testimony. Given the fact that K.S. and Redd both previously had relationships with Wells, one could argue some form of bias for either of their testimonies. However, no such bias can be attributed to Officer Watts. Moreover, Officer Watts was firm in his contention that he saw Wells behind the wheel of the Porsche before it fled the scene. Officer Watts explained that upon receiving the dispatch, he immediately pulled up a photograph of Wells from the BMV. As such, he had a proper comparison point immediately before the identification.

Moreover, Wells does not dispute being present at K.S.'s apartment at the time she made the 911 call. Instead, he insists that he ran following that call, circled the building, utilized another entrance, and effectively hid from police in Redd's apartment. Wells' story, however, strains credulity. To believe Wells, this Court would have to believe that 1) another individual was leaving K.S.'s apartment complex at 4:00 a.m. in a high-end luxury vehicle, 2) that person had reason to leave off his headlights and run from police, and 3) that person looked enough like Wells for Officer Watts to mistakenly believe it was Wells.

Common sense, however, dictates that the Court find that K.S.'s version of events is far more plausible. Wells could be heard in the background of K.S.'s 911 call. As a result, Wells cannot deny his presence at the apartment complex. The fact that K.S. identified the vehicle

5

Wells got into when he ran from her as a Porsche and that Officer Watts was able to verify that such a vehicle was in fact leaving the complex at the same time serves to bolster her credibility.[3]

Finding K.S. credible regarding the events of March 16, 2022, it follows that the Court finds her credible with respect to the assault on March 5, 2022. In that regard, the Court notes that K.S.'s injuries and damaged phone corroborate her account of the assault. In contrast, Wells' alibi does not withstand scrutiny. First, Lemmons and Wilson both opine that Wells was never out of their sight for any significant period of time until well after the time that K.S. alleges she was assaulted. However, neither claim to have witnessed the phone call that occurred between Wells and K.S. As Officer Watts was present during that call, the Court has no doubt that it occurred. Similarly, Wilson's account includes that she, Wells, and Lemmons were out at a bar and then an after-hours club until roughly 4:30 or 5:00 a.m. in the morning. However, her account also suggests that she was awake roughly an hour later. It defies logic to suggest that Wilson attended a concert, then spent numerous hours at a bar, then numerous more hours at a club, and still remembered every detail of the evening, including Wells' whereabouts. Moreover, while Wilson has a picture with a timestamp of shortly after 1:00 a.m., the Government highlighted that such a timestamp could easily be altered by an end user.[4]

The Court also notes that Wells rather conveniently had a story to explain away nearly every fact introduced by K.S. He claimed that her phone was broken on a prior occasion rather than during his assault. He insisted that any injuries that appeared in the photographs were the

---

[3] Much was made of the fact that K.S. identified the Porsche as brown and that Officer Officer Watts described it as gray or silver. Given that there can be no doubt that K.S. identified the same vehicle that Officer Watts then pursued, any mistake in description of its color has no impact on her credibility.
[4] In any event, that timestamp would not preclude Wells from later attacking K.S. at her apartment.

result of lupus, a condition which he insisted resulted in K.S. being routinely bruised. None of this information could be independently verified. Moreover, Wells was definitively caught being dishonest by Officer Watts. When Officer Watts called Wells at roughly 7:00 a.m. on March 5, 2022, Wells insisted that he had been asleep all night. When confronted with the fact that Officer Watts knew about Wells' earlier phone call to K.S. while she was at the hospital, Wells simply returned to denying he had done anything.

Similarly, the Court declines to credit Wells' statement that he did not report his contact with Officer Watts because he did not believe Officer Watts was law enforcement. Wells concedes that Officer Watts properly identified himself and detailed the allegations against him. Moreover, Officer Watts went as far as to inform Wells that he would be seeking an arrest warrant. It simply defies logic to think that Wells discredited all of this information simply because his caller ID did not indicate that the caller was associated with law enforcement.

The Court would also note that it had the opportunity to directly observe the demeanor of each of the witnesses that testified in this matter. Those observations lend support for the conclusion that K.S. and Officer Watts' testimony was credible, and the testimony of Wells, Redd, Lemmons, and Wilson was not. As detailed above, physical evidence supports that Wells assaulted K.S. and his alibi simply does not withstand scrutiny. Accordingly, the Court finds be a preponderance of the evidence that Wells has violated his supervised release with respect to all three allegations. A sentencing hearing will be scheduled on these violations by separate order of the Court.

IT IS SO ORDERED.

December 27, 2022  /s/ John R. Adams
Date   Judge John R. Adams
   United States District Court